## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No: 19-01057-dd |
| | ) | Chapter 7 |
| Jane Elizabeth Murphy and | ) | |
| Dennis John Murphy, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

**NOTICE OF MOTION SEEKING
11 U.S.C. §362(D) RELIEF**

**TO:   DEBTOR, TRUSTEE (if applicable), AND THOSE NAMED IN THE ATTACHED
MOTION:**

**PLEASE TAKE NOTICE THAT ON** May 14, 2019, at 9:00 A.M., at the  U.S.
Bankruptcy Court, 145 King Street, Room 225, Charleston,South Carolina, a hearing will be held
on the attached Motion.

Within fourteen (14) days after service of the attached Motion, and the Notice of Motion,
accompanied by the Movant's Certification of Facts, and a blank Certification of Facts form, any
party objecting to the relief sought shall:

1. File with the Clerk of this Court a written objection to the §362 Motion;
2. File with the Clerk of this Court a Certification of Facts;
3. Serve on the Movant items 1 and 2 above at the address shown below; and
4. File a certificate of such service with the Clerk of this Court.

Should you fail to comply with this procedure, you may be denied the opportunity to
appear and be heard on this proceeding before the Court.

| | |
|---|---|
| DATE OF ISSUANCE: | March 28, 2019 |
| MOVANT: | Specialized Loan Servicing, LLC |
| ATTORNEY: | Lawrence W. Johnson, Jr. DCID No. 2200 |
| ADDRESS: | JOHNSON LAW FIRM, P.A.<br>Post Office Box 883<br>Columbia, South Carolina  29202<br>(803) 771-1500<br>Jlfpa@bellsouth.net |

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No: 19-01057-dd |
| | ) | Chapter 7 |
| Jane Elizabeth Murphy and | ) | |
| Dennis John Murphy, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

## MOTION ON BEHALF OF SPECIALIZED LOAN SERVICING LLC
## TO MODIFY STAY OR FOR ADEQUATE PROTECTION

Specialized Loan Servicing LLC, as servicing agent for GSMPS Mortgage Loan Trust 2006-RP2, U.S. Bank National Association, as Trustee ("Movant"), a party in interest, respectfully represents:

1.      The Bankruptcy Court has jurisdiction over this proceeding pursuant to Local Rule 29.01 of the United States District Court for the District of South Carolina, and 28 U.S.C. Section 157.

2.      Debtors filed for relief under Chapter 7 of the United States Bankruptcy Code on February 25, 2019.  Kevin Campbell was appointed Trustee.

3.      Movant is the holder of a  claim against the Debtors in the amount of $273,548.57 as of this filing, plus interest and costs.  Copies of the Note, Mortgage, and Assignments of Mortgage are attached hereto and incorporated herein by reference as Exhibits.  Specialized Loan Servicing LLC services the loan on the property referenced in this motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtors obtain a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee.  Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage. The collateral consists of real estate located at 261 Main Street, Newington, Connecticut 06111.

4.      Movant does not have and has not been offered adequate protection for its interest in the collateral.

5.      On information and belief, the Debtors have no equity in the collateral.

6.      The Debtors continue to use the collateral without making required payments

1

thereon to the further detriment of Movant.

7.    Upon information and belief, the Debtors has surrendered their interest therein.

8.    Upon information and belief, the property is not necessary for an effective reorganization.

9.    If Movant is not permitted to foreclose its security interest in the collateral, it will suffer irreparable injury.

10.    Should this Court fail to grant Movant's request for relief from the automatic stay, Movant requests that this Court require Debtors to provide it with adequate protection.

11.    Movant agrees to waive any claim that may arise under 11 U.S.C. Section 503(b) or 11 U.S.C. Section 507(b) that may result following the entry of an Order in this matter, and Movant further agrees that any funds realized in excess of its debt will be paid to the Trustee if Movant is granted relief to enforce its security interest and state law rights in its collateral.

12.    Movant respectfully requests that this Court vacate the stay of Judgment pursuant to F.R.B.P. 4001(a) (3) to avoid further injury to Movant.

WHEREFORE, Movant prays for entry of an order for relief against the Debtors under Section 362(d)(1) and (2) or for adequate protection under Section 363(e) of the United States Bankruptcy Code, and for such other relief as this Court deems just.

JOHNSON LAW FIRM, P.A.

Lawrence W. Johnson, Jr.
District Court ID #2200
Post Office Box 883
Columbia  SC  29202
(803) 771-1500
Attorney for Specialized Loan Servicing LLC

Columbia, South Carolina

March 28, 2019

2

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:                                    )       Bankruptcy Case No: 19-01057-dd
                                          )       Chapter 7
    Jane Elizabeth Murphy and        )
    Dennis John Murphy,              )
                                          )
        Debtors.                )
_____)

### CERTIFICATION OF FACTS

In the above-entitled proceeding, in which relief is sought from the automatic stay in accordance with 11 U.S.C. §362, I do hereby certify to the best of my knowledge, the following:

1.  <u>Nature of Movant's Interests:</u>
    Secured.

2.  <u>Brief Description of Security Interest, copy attached (if applicable):</u>

    (see copies attached to Motion to Modify Stay filed herewith).

3.  <u>Description of property encumbered by stay (include serial number, lot and block number, etc.):</u>
    real estate located at 261 Main Street, Newington, Connecticut 06111.

4.  <u>Basis for relief (property not necessary for reorganization, debtor has no equity, property not property of the estate, include applicable subsection of Section 362):</u>

    For cause, lack of adequate protection, Section 362(d)(1); lack of necessity to reorganization, Section 362(d)(2); lack of adequate protection, Section 363(e).

5.  <u>Prior adjudication by other Courts, copy attached (decree of foreclosure, order for possession, levy of execution, etc., if applicable).</u>    None

1

6.    Valuation of property, copy of valuation attached (appraisal, blue books, etc.):

    Fair Market Value                  $140,000.00
    Senior Liens                     $
    Movant's Lien                  $273,548.57
    Other Liens                    $
    Net Equity                     $0.00
    Source/Basis of Value- Debtors' schedule A and D

7.    Amount of Debtor's estimated equity (using figures from paragraph 6, supra):

    $ 0.00

8.    Month and Year in Which First Direct Post-Petition Payment Came Due to Movant (if applicable). March, 2019

9.    (a)    Detailed Listing of all directly received Post-petition payments showing dates of receipt, amount and application date. None

    (B)    For Objecting Party: List all post-petition payments, listed by Movant in (a) above, disputed as having been made. Attach written proof of such payments or a statement why such proof is unavailable at the time of filing of this Objection.

10.    Month and Year for which Post-Petition account is Due as of this Motion. August, 2016

Attorney for Movant:    Lawrence W. Johnson, Jr. DCID No: 2200
                            JOHNSON LAW FIRM, P.A.

Representing:    Specialized Loan Servicing, LLC

Address:    Post Office Box 883
               Columbia, South Carolina 29202

Telephone:    (803) 771-1500

Columbia, South Carolina

March 28, 2019

Loan Number: ███████

# NOTE

| FHA CASE NO. |
|---|
| ████████████ |

NOVEMBER 24, 2004
[Date]

261 MAIN STREET, NEWINGTON, CONNECTICUT 06111
[Property Address]

### 1.  PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
FAIRFIELD FINANCIAL MORTGAGE GROUP, INC., A CONNECTICUT CORPORATION

and its successors and assigns.

### 2.  BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of    ONE HUNDRED
NINETY THOUSAND FOUR HUNDRED SIXTY-FOUR AND 00/100                                    Dollars
(U.S.$ 190,464.00        ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of    SIX AND 750/1000
percent (    6.750  %) per year
until the full amount of principal has been paid.

### 3.  PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same
date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might
result if Borrower defaults under this Note.

### 4.  MANNER OF PAYMENT
(A)    Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning
on    JANUARY 1, 2005        . Any principal and interest remaining on the first day of
DECEMBER 1, 2034        , will be due on that date, which is called the "Maturity Date."

(B)    Place
Payment shall be made at  2 NATIONAL PLACE, DANBURY, CONNECTICUT 06810

or at such other place as Lender may designate in writing by notice to Borrower.

(C)    Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 1,235.35
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal,
interest and other items in the order described in the Security Instrument.

(D)    Allonge to this Note for Payment Adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part
of this Note. (Check applicable box.)

☐ Growing Equity Allonge            ☐ Graduated Payment Allonge

☐ Other [specify]

### 5.  BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid
for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower
makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender
agrees in writing to those changes.

MULTISTATE-FHA  FIXED RATE NOTE (6/96)
Document Systems, Inc. (800) 649-1362                    Page 1 of 2

**6. BORROWER'S FAILURE TO PAY**

   (A)   Late Charge for Overdue Payments

   If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000*** percent ( 4.000 %) of the overdue amount of each payment.

   (B)   Default

   If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

   (C)   Payment of Costs and Expenses

   If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.   WAIVERS**

   Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.   GIVING OF NOTICES**

   , Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

   Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Note.

_____ (Seal)        _____ (Seal)
DENNIS J. MURPHY        -Borrower        JANE E. MURPHY        -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                -Borrower

Pay to the order of
Without Recourse
WASHINGTON MUTUAL BANK, FA
By _____
LETA HUTCHINSON
ASSISTANT VICE PRESIDENT

Pay To The Order Of:
Without Recourse Washington Mutual Bank, FA
By: _____
Maureen P. Terry
Assistant Secretary
Fairfield Financial Mortgage Group, Inc.

MULTISTATE-FHA FIXED RATE NOTE (6/96)
Document Systems, Inc. (800) 649-1362                Page 2 of 2

Usflx2.sta

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY
SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT
0022

Washington Mutual Bank, FA



| LOAN #1: ████████ | LOAN #2: | SEQ#: | CONNECTICUT |
| MERS ID#: | | | |

# *ALLONGE*

This Allonge is attached to and made a part of that certain Note or Bond, or Lost Note Affidavit in lieu of that certain Note or Bond,

Dated:   **11/24/2004**

Made By:   **DENNIS J. MURPHY AND JANE E. MURPHY**, Mortgagors/Trustors

To:   **FAIRFIELD FINANCIAL MORTGAGE GROUP, INC. CORPORATION**, Mortgagee/Beneficiary

In the Amount of :   **$190,464.00**

Property Address :   **261 MAIN STREET, NEWINGTON, CT 06111**

Pay to the order of

## Wells Fargo Bank, N.A.

without recourse.

**WASHINGTON MUTUAL BANK** (fka Washington Mutual Bank, FA)

BY: _____

C. Fetner
Its: Authorized Representative

Page 1 of 9)

63962

VOL. 1825 PAGE 668

After Recording Return To:
FAIRFIELD FINANCIAL MORTGAGE GROUP, INC.
2 NATIONAL PLACE
DANBURY, CONNECTICUT 06810

─────────── [Space Above This Line For Recording Data] ───────────

## OPEN-END MORTGAGE

FHA CASE NO. ▮▮▮▮▮▮

Loan Number: ▮▮▮▮▮▮

THIS MORTGAGE ("Security Instrument") is given on  NOVEMBER 24, 2004
The mortgagor is DENNIS J. MURPHY AND JANE E. MURPHY

("Borrower"). This Security Instrument is given to
FAIRFIELD FINANCIAL MORTGAGE GROUP, INC., CORPORATION
which is organized and existing under the laws of   CONNECTICUT        , and whose address is

2 NATIONAL PLACE, DANBURY, CONNECTICUT 06810
("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED NINETY THOUSAND FOUR HUNDRED SIXTY-FOUR AND 00/100
Dollars (U.S. $190,464.00      ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on  DECEMBER 1, 2034     . This Security Instrument secures to Lender: (a) the repayment
of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to Lender and Lender's
successors and assigns the following described property located in  HARTFORD
County, Connecticut:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS
EXHIBIT "A".

CONNECTICUT FHA MORTGAGE
6/96

Page 1 of 8

DocMagic ℰℱℴrɱ𝒔 800-649-1362
www.docmagic.com

I CERTIFY THIS TO BE A TRUE COPY
OF THE DOCUMENT RECORDED IN THE
NEWINGTON LAND RECORDS, VOLUME
1825  PAGE 668
ON  11/24/04
DATED AT NEWINGTON CT THIS 7th
DAY OF October
_____ Asst
TOWN CLERK

VOL. 1825 PAGE 669

which currently has the address of. **261 MAIN STREET**
                                                        [Street]

**NEWINGTON**       , Connecticut        **06111**        ("Property Address"):
   [City]                                 [Zip Code]

    TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
    1.   Payment of Principal, Interest and Late Charge.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
    2.   Monthly Payment of Taxes, Insurance, and Other Charges.  Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4.  In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either:  (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary.  Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

    Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

    If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA.  If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

    The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument.  If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).
    3.   Application of Payments.  All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
    FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
    SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
    THIRD, to interest due under the Note;

---

CONNECTICUT FHA MORTGAGE
6/96

Page 2 of 8

*DocMagic* *℮Forms* 800-649-1362
www.docmagic.com

VOL. 1825 PAGE  670

FOURTH, to amortization of the principal of the Note; and
FIFTH, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance.  Borrower shall insure all improvements on the Property,
whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire,
for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that
Lender requires.  Borrower shall also insure all improvements on the Property, whether now in existence or
subsequently erected, against loss by floods to the extent required by the Secretary.  All insurance shall be carried with
companies approved by Lender.  The insurance policies and any renewals shall be held by Lender and shall include
loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail.  Lender may make proof of loss if not
made promptly by Borrower.  Each insurance company concerned is hereby authorized and directed to make payment
for such loss directly to Lender, instead of to Borrower and to Lender jointly.  All or any part of the insurance
proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and
this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment
of principal, or (b) to the restoration or repair of the damaged Property.  Any application of the proceeds to the
principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or
change the amount of such payments.  Any excess insurance proceeds over an amount required to pay all outstanding
indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes
the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the
purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application;
Leaseholds.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty
days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property)
and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of
occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating
circumstances exist which are beyond Borrower's control.  Borrower shall notify Lender of any extenuating
circumstances.  Borrower shall not commit waste or destroy, damage or substantially change the Property or allow
the Property to deteriorate, reasonable wear and tear excepted.  Lender may inspect the Property if the Property is
vacant or abandoned or the loan is in default.  Lender may take reasonable action to protect and preserve such vacant
or abandoned Property.  Borrower shall also be in default if Borrower, during the loan application process, gave
materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material
information) in connection with the loan evidenced by the Note, including, but not limited to, representations
concerning Borrower's occupancy of the Property as a principal residence.  If this Security Instrument is on a
leasehold, Borrower shall comply with the provisions of the lease.  If Borrower acquires fee title to the Property, the
leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation.  The proceeds of any award or claim for damages, direct or consequential, in connection
with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are
hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid
under the Note and this Security Instrument.  Lender shall apply such proceeds to the reduction of the indebtedness
under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in
paragraph 3, and then to prepayment of principal.  Any application of the proceeds to the principal shall not extend
or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such
payments.  Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this
Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property.  Borrower shall pay all
governmental or municipal charges, fines and impositions that are not included in paragraph 2.  Borrower shall pay
these obligations on time directly to the entity which is owed the payment.  If failure to pay would adversely affect
Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts
evidencing these payments.

VOL. 1825 PAGE 671

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  Fees. Lender may collect fees and charges authorized by the Secretary.

9.  Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within  60 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to  60 DAYS                         from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.  Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses

Page 5 of 9)

VOL. 1825 PAGE 672

properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

CONNECTICUT FHA MORTGAGE
6/96

Page 5 of 8

DocMagic *eDocs* 800-649-1362
www.docmagic.com

VOL. 1825 PAGE 673

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17.  Assignment of Rents.  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property.  Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.  However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.  This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.  However, Lender or a judicially appointed receiver may do so at any time there is a breach.  Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18.  Foreclosure Procedure.  If Lender requires immediate payment in full under paragraph 9, Lender without further demand may invoke any of the remedies permitted by applicable law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act.  Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19.  Release.  Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20.  Waivers.  Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

21.  Future Advances.  Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.

22.  Riders to this Security Instrument.  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider            ☐ Graduated Payment Rider     ☐ Growing Equity Rider
☐ Planned Unit Development Rider  ☐ Adjustable Rate Rider      ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider    ☐ Other [Specify]

VOL. 1825 PAGE 674

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 7 of this Security
Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
DENNIS J. MURPHY              -Borrower          JANE E. MURPHY              -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                       -Borrower

Signed, sealed and delivered in the presence of:

_____                  _____
Walter A. Clebowicz

CONNECTICUT FHA MORTGAGE                    Page 7 of 8              DocMagic @Forms 800-649-1362
6/96                                                                www.docmagic.com

Book: 1825   Page:   668  File Number: 00063962  Seq:

State of Connecticut

VOL. 1825 PAGE 675

County of HARTFORD

The foregoing instrument was acknowledged before me this     November 24, 2004
by DENNIS J. MURPHY, JANE E. MURPHY

_____
Signature of Person Taking Acknowledgment

Walter A. Clebowicz
Commissioner of the Superior Court
Title

_____
Serial Number, if any

(Seal)                              My commission expires:

CONNECTICUT FHA MORTGAGE          Page 8 of 8          DocMagic EForms 800-649-1362
6/96                                                   www.docmagic.com

Loan Number: ███████

Date: NOVEMBER 24, 2004

Property Address: 261 MAIN STREET, NEWINGTON, CONNECTICUT 06111

VOL. 1825 PAGE 676

EXHIBIT "A"

LEGAL DESCRIPTION

A certain piece or parcel of land, with the buildings and improvements thereon, situated in the Town of Newington, County of Hartford, and State of Connecticut, known as No. 261 Main Street and being Lot NO. 27 on a map entitled "Map of Briarwood Property of Regina F. Charbonnier Newington. Conn. Scale 1" = 50' April 1941 Revised July 15, 1943 To Shown Lots 29 & 30.  Revised. Aug. 20 1945 To Show Lots 31 & 32 E.C. Fresen, Land Surveyor" on file in the Newington Town Clerk's Office, more particularly bounded as follows:

NORTHERLY:        by Lot No. 28 on said map, 140 feet;

EASTERLY:          by Main Street, 54.14 feet;

SOUTHEASTERLY:  by a curve, connecting the westerly line of Main Street with the northerly line of Briarwood Road, 32.36 feet;

SOUTHERLY:        by Briarwood Road, 119.27 feet; and

WESTERLY:          by Lot No. 26 on said map, 69.07 feet.

RECEIVED & RECORDED IN
NEWINGTON LAND RECORDS

A.P.N. # :        2004 NOV 24  A II: 24

DocMagic €Ⓡ℠℠ 800-649-1362
www.docmagic.com

VOLUME 1825 PAGE 668
BY Tanya D lane
TOWN CLERK

65004                    VOL. 1832 PAGE 446

RDED MAIL TO:

FINANCIAL MORTGAGE GROUP, INC.
PLACE
CONNECTICUT 06810

ATTN: QUALITY CONTROL

Loan Number: ▮▮▮▮▮▮
Servicing Number:

[Space Above This Line For Recording Data]

# Assignment of Mortgage

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to WASHINGTON MUTUAL BANK, F.A., 2210 ENTERPRISE DRIVE, FLORENCE, SC 29501

all beneficial interest under that certain Mortgage dated NOVEMBER 24, 2004      executed by
DENNIS J. MURPHY AND JANE E. MURPHY

                                                                    , Mortgagor
and recorded as Instrument No.              concurrently herewith on              in book
page              , of Official Records in the County Recorder's office of HARTFORD              County,
CONNECTICUT              , describing land therein as
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
"A".

Commonly known as: 261 MAIN STREET, NEWINGTON, CONNECTICUT 06111

Assessor's Parcel #:
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.
FAIRFIELD FINANCIAL MORTGAGE GROUP, INC., A CONNECTICUT CORPORATION

By: _Maureen P. Terry_          By: _Darlene Lacombe_

Name: MAUREEN P. TERRY          Name: DARLENE LACOMBE

Title: ASSISTANT SECRETARY          Title: ASSISTANT SECRETARY

Attest JOMAIRA ALMONTE          Attest MARY ANN BALCIO

STATE OF CONNECTICUT

COUNTY OF FAIRFIELD _____ SS.
On 11/24/2004              before me,

VIRGINIA M. ROBERTSON
personally appeared

MAUREEN P. TERRY AND DARLENE LACOMBE

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

(This area for Corporate Seal)

Signature _Virginia M. Robertson_

VIRGINIA M. ROBERTSON
Name (Typed or Printed)
Notary Public in for said State

(This area for official notarial seal)

MY COMMISSION EXPIRES 07/31/05

USMS0181 (03-03-94)

CopI.son

VOL. **1832** PAGE **447**

Loan Number: ███████

Date: NOVEMBER 24, 2004

Property Address: 261 MAIN STREET, NEWINGTON, CONNECTICUT 06111

## EXHIBIT "A"

## LEGAL DESCRIPTION

A certain piece or parcel of land, with the buildings and improvements thereon, situated in the Town of Newington, County of Hartford, and State of Connecticut, known as No. 261 Main Street and being Lot NO. 27 on a map entitled "Map of Briarwood Property of Regina F. Charbonnier Newington. Conn. Scale 1" = 50' April 1941 Revised July 15, 1943 To Shown Lots 29 & 30. Revised Aug. 20 1945 To Show Lots 31 & 32 E.C. Fresen, Land Surveyor" on file in the Newington Town Clerk's Office, more particularly bounded as follows:

NORTHERLY:            by Lot No. 28 on said map, 140 feet;

EASTERLY:             by Main Street, 54.14 feet;

SOUTHEASTERLY:  by a curve, connecting the westerly line of Main Street with the northerly line of Briarwood Road, 32.36 feet;

SOUTHERLY:           by Briarwood Road, 119.27 feet; and

WESTERLY:            by Lot No. 26 on said map, 69.07 feet.

RECEIVED & RECORDED IN
NEWINGTON LAND RECORDS

A.P.N. # :            2005 JAN 18  P 12: 20

DocMagic *eForms* 800-649-1362
www.docmagic.com

VOLUME *1832*        PAGE 44*6*
BY ~Tanya D Lane~

TOWN CLERK

Doc ID:   000055950001 Type: LAN
Book 1924 Page 787
File# 80603

WAMU #:
Wells#:
Pool #: Privates

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, WHOSE ADDRESS IS 2210 ENTERPRISE DRIVE , FLORENCE, SC 29501, (ASSIGNOR),** by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **WELLS FARGO BANK, NA, WHOSE ADDRESS IS 1 HOME CAMPUS , DES MOINES, IA 50328, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said Mortgage bearing the date 11/24/2004 made by DENNIS J. MURPHY AND JANE E. MURPHY to FAIRFIELD FINANCIAL MORTGAGE GROUP, INC. and recorded in the Land Records of the Town of NEWINGTON , State of Connecticut, in Vol. 1825 , at Page 668 to which reference may be had.

IN WITNESS WHEREOF, WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA has hereunto set their hands THIS 18TH DAY OF JANUARY IN THE YEAR 2007

(seal)

Washington Mutual Bank
Corporate Seal Has Not Been Adopted

By:_____
MARY JO MCGOWAN
ASST. VICE-PRESIDENT

Signed, Sealed and Delivered in the presence of:

SUSAN STRAATMANN  Witness

CRYSTAL MOORE  Witness

STATE OF FLORIDA  COUNTY OF PINELLAS
PERSONALLY APPEARED MARY JO MCGOWAN , ASST. VICE PRESIDENT  of WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA , aforesaid, signer and sealer of the foregoing instrument, and acknowledged the same to be his/her free act and deed as such officer and the free act and deed of said corporation, before me.

MARIA LEONOR GERHOLDT
Notary Public

MARIA LEONOR GERHOLDT
Notary Public State of Florida
My Commission Exp. May 28, 2009
No. DD 0434621
Bonded through (800) 432-4254
Florida Notary Assn., Inc.

Document Prepared By:
   J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
After recordation return to:
Nationwide Title Clearing
2100 Alt. 19 North
Palm Harbor, FL 34683

Received for Record at Newington, CT
On 01/29/2007 At 12:02:53 pm

UNITED STATES BANKRUPTCY COURT

DISTRICT OF SOUTH CAROLINA

IN RE:

CASE NO:

CHAPTER:

CERTIFICATION OF FACTS

DEBTOR(S)

In the above-entitled proceeding, in which relief is sought by (name of movant) from the automatic stay provided by 11 U.S.C. § 362, I do hereby certify to the best of my knowledge the following:

(1) Nature of Movant's Interest.

(2) Brief Description of Security Agreement, copy attached (if applicable).

(3) Description of Property Encumbered by Stay (include serial number, lot and block number, etc.).

(4) Basis for Relief (for cause, property not necessary for reorganization, debtor has no equity, property not property of estate, etc.) include applicable subsection of 11 U.S.C. § 362).

(5) Prior Adjudication by Other Courts, copy attached (Decree of Foreclosure, Order for Possession, Levy of Execution, etc., if applicable).

(6) Valuation of Property, copy of Valuation attached (Appraisal, Blue Book, etc.):

Fair Market Value:_____

Senior Liens :_____

Movant's Lien:_____

Other Liens:_____
(Listed in order of priority)

Net Equity:_____

Source/Basis of Value: _____

(7) Amount of Debtor's Estimated Equity (using figures from paragraph 6, supra).

(8) Month and Year in Which First Direct Post-petition Payment Came Due to Movant (if applicable).

**(9)(a)** For Movant/Lienholder (if applicable): List or attach a list of all post-petition payments received directly from debtor(s), clearly showing date received, amount, and month and year for which each such payment was applied.[1]

**(b)** For Objecting Party (if applicable): List or attach a list of all post-petition payments included in the Movant's list from (a) above which objecting party disputes as having been made. Attach written proof of such payment(s) or a statement as to why such proof is not available at the time of filing this objection.

**(10)** Month and Year for Which Post-petition Account of Debtor(s) is Due as of the Date of this Motion:

Date: _____

_____
Signature of Attorney/ *Pro Se* Debtor

_____
Typed Printed Name

_____
Address/Telephone/Facsimile/E-mail

_____
District Court I.D. Number

---

[1] This requirement may not be met by the attachment of a payment history generated by the movant. Such attachment may be utilized as a supplement to a complete and detailed response to (9)(a) above, which should be shown on this certification.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

IN RE:                                    )       Bankruptcy Case No: 19-01057/DD
                                          )       Chapter 7
Jane Elizabeth Murphy                     )
Dennis John Murphy                        )
                                          )
                                          )
                        DEBTOR(S).  )
_____           )

## CERTIFICATE OF SERVICE

This is to certify that I, Sharal Bateman, of the Johnson Law Firm, P.A, am this day serving on the persons named below the Notice of Motion Seeking 11 U.S.C. Section 362 (D) Relief, Motion on Behalf of Specialized Loan Servicing LLC, to Modify Stay, Certification of Facts, and a Blank Certification of Facts in this matter by placing a copy of same this March 28, 2019, in the United States Mail, postage pre-paid, in envelopes addressed as follows:

Jane Elizabeth Murphy
Dennis John Murphy
Pro-Se Debtors
4100 A Shipyard Walk
Myrtle Beach, SC 29579

Kevin Campbell (via ECF)
Chapter 7 Trustee
PO Box 684
Mt. Pleasant, SC 29465

Sharal Bateman

March 28, 2019